**Petition of TUCCI.**

**No. 141, Docket 21854.**

United States Court of Appeals
Second Circuit.

Argued Jan. 10, 1951.

Decided March 14, 1951.

Sylvester & Harris, New York City (Sidney G. Kingsley, Charles L. Sylvester, New York City, of counsel), for petitioner-appellant.

Irving H. Saypol, U. S. Atty., New York, Henry L. Glenn, Asst. U. S. Atty., City, for the Southern District of New New York City (Oswald I. Kramer, Atty., United States Department of Justice Immigration and Naturalization Service, New York City, of counsel), for United States.

Before CHASE, CLARK and FRANK, Circuit Judges.

CHASE, Circuit Judge.

Niccolo Tucci, a native of Switzerland, and a citizen of Italy, first entered this country as a student in 1931 when he was twenty-three years old. He had a student's visa and remained here for a year's study at Amherst College. He then entered the University of Florence and received the degree of Doctor in Social and Political Science. After a short period of service in the Italian Army, he returned to the United States as a quota immigrant and was for a

---

time a teacher in the University of California. In 1934 he again returned to Italy and became an employee of the government which required his membership in the Fascist party, and he became a member in 1936. He returned to the United States on a diplomatic passport that year and for a time was cultural attache of the Italian consulate in New York. There is evidence, though no finding, that he left the Fascist party in 1937, after he was asked by the Italian Ambassador to this country to read Silone's "Bread and Wine" and to answer it from the Fascist standpoint. He was so disturbed when he concluded that there was no such answer that, quite contrary to his habit, he indulged in a five-day drinking debauch and soon left for Rome where his wife, an American citizen, had preceded him. He there criticized the Fascist party and its works so severely that he escaped unscathed only because friends of his father and a relative of his wife who were influential in the Italian government interceded for him, being aided somewhat by the general impression that he was a "crackpot." In 1938 the petitioner entered this country lawfully and has since remained here. His wife returned here in 1939. They have two children, one born in this country and one born in Italy.

The petitioner has taught Italian, French and German, done some translating, made some speeches. He is a writer with such an independent turn of mind that he finds it difficult to agree with much that is said and done by others than himself. Perhaps he is so changeable in his opinion that his nearest approach to stability of thought is found in his attitude of agreement with ancient philosophers, notably Plato. His flow of language seems not to be restricted when abstractions are discussed though he disclaims much knowledge of historical facts and is perhaps irked when account need be taken of things like that. But, however that may be, he speaks and writes freely as he thinks at the time regardless of any effect upon his own fortunes. Indeed, he appears to take delight in making that needlessly plain, as will later appear especially

in respect to a speech he delivered at the University of Virginia in 1939.

The appellant filed his petition for admission to citizenship on July 26, 1945, his declaration of intention having been filed on March 27, 1939. After he had been examined at length, the Immigration and Naturalization Service recommended that the petition be denied upon the following grounds:

(a) The petitioner had failed to establish his good moral character during a period of five years immediately preceding the filing of his petition [1] because he falsely testified as to his understanding of the character of the speech he delivered at the University of Virginia.

(b) That he had failed to prove his attachment to the principles of the Constitution and that he was well disposed to the good order and happiness of the United States during that five year period.

After hearing, the district court discussed the evidence and the issues at considerable length in an opinion wherein he stated that he was "unable to conclude, in the light of the views entertained by the petitioner, that he has sustained the burden of establishing that since July 26, 1940, he has been and still is a person of good moral character, attached to the principles of the Constitution and well disposed to the good order and happiness of the United States." Accordingly the recommendation of the Immigration and Naturalization Service was upheld and the petition for admission to citizenship was denied. This appeal followed.

There were no findings except as statements in the opinion filed may be treated as findings of fact, and it is not clear whether the court relied on admissions of the petitioner, which were later recanted, to the effect that he deliberately testified falsely as to his understanding of the purport of his University of Virginia speech. The gist of his admission is shown by the followng quotation from an affidavit he made as part of the proceedings before the Examiner. "I want to cancel what I have said before, about my not testifying falsely concerning that speech. I knew it was a pro-fascist

[1]. Nationality Act of 1940, Sec. 307(a), 8 U.S.C.A. § 707(a).

speech when I testified on May 29, 1946 that the speech was merely isolationist. I believed, when I so testified, that this would make it easier for me to be naturalized. I believed that, since isolationism was an attitude common at the time of my speech and this would not necessarily be held against me, my characterization of the speech as isolationist would help my natturalization. I could not get myself to describe my speech as fascist, as I could not use that ugly word. I knew, when I testified on May 29, 1946 and merely said the speech was isolationist, that this testimony was not true. I believed, when I so testified, that if I admitted that the speech was pro-fascist, the examiner would read the speech already prejudiced against me. This, I believed, would result in hasty and unfavorable decision in my case."

Very likely the trial court could, despite the petitioner's later denial of intent to deceive, have taken such admissions at face value. If so, they naturally would have adversely affected his credibility and also might well have prevented his establishment of the good moral character essential to the granting of his petition.

But we find in this record no satisfying assurance, in the absence of an express finding, that such admissions were more than indicative of confused thought too readily expressed, and often soon repudiated, by an over-talkative person. As much should be said of much of the rest of the petitioner's assertions regarding his political beliefs and attitudes. But there is one admission which stands out clearly as a fact and that is that, at least for some years and until some time in 1937, the petitioner was a member of the Italian Fascist party who believed in its principles and actively advocated them. As this, in our opinion, requires the affirmance of the order under the provisions of the Internal Security Act of 1950, 8 U.S.C.A. § 137 et seq., 50 U.S.C.A. § 781 et seq., which became effective on September 23, 1950, we put the decision upon that ground alone.

Section 25 of the Subversive Activities Control Act of 1950,[2] which is a part of Title I of the Internal Security Act of 1950, amends Sec. 305 of the Nationality Act of 1940 by forbidding the naturalization of any person "hereafter" as a citizen of the United States:

"* * * who, while not within any of the other provisions of this section, advocates the economic, international, and governmental doctrines of world communism or the economic or governmental doctrines of any other form of totalitarianism, or who is a member of or affiliated with any organization that advocates the economic, international, and governmental doctrines of world communism, or the economic and governmental doctrine of any other form of totalitarianism, * * *.

* * * * * *

"(c) The provisions of this section shall be applicable to any applicant for naturalization who at any time within a period of ten years' immediately preceding the filing of the petition for naturalization is, or has been found to be, within any of the classes enumerated within this section, notwithstanding that at the time petition is filed he may not be included within such classes."

Section 3(19) of the Act, 50 U.S.C.A. § 782(19), makes advocating the economic and governmental doctrines of fascism the advocating of the doctrines of totalitarianism within the meaning of the statute. Though this statutory restriction upon naturalization was not in effect when the petition was denied below, nor indeed, until after the appeal was taken, that law as it now stands controls so far as applicable. United States v. The Peggy, 1 Cranch 103, 110, 2 L.Ed. 49; Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed 327; United States ex rel. Pizzuto v. Shaughnessy, 2 Cir., 184 F.2d 666, 667. So it becomes necessary to decide whether the law as changed applies to an applicant for citizenship who filed his petition before it became effective. There is no question of constitutionality involved in holding that it does apply. Unquestionably Congress may condition the grant of citizenship to an alien as it may see fit. Schneiderman v. United States, 320 U.S. 118, 131–132, 63 S.

2. P.L. 831, 81st Cong., 2d Sess., c. 1024, 8 U.S.C.A. § 705.

Ct. 1333, 87 L.Ed. 1796; United States v. MacIntosh, 283 U.S. 605, 615, 51 S.Ct. 570, 75 L.Ed. 1302; Terrace v. Thompson, 263 U.S. 197, 220, 44 S.Ct. 15, 68 L.Ed 255; United States v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 61 L.Ed. 853; Benzian v. Godwin, 2 Cir., 168 F.2d 952. The decisive question is whether Congress intended to make the amendment apply to petitioners who had filed petitions previous to its effective date. Of course the words which were used could apply to previously-filed petitions as well as to subsequently-filed ones. They are "within a period of ten years immediately preceding the filing of the petition" and their application to subsequently-filed petitions is clear enough. Cf. United States v. Waskowski, 7 Cir., 158 F.2d 962. We have found nothing in the legislative history of the Internal Security Act of 1950 to shed any light upon what Congress intended to be the scope of applicability in this respect and so there is nothing in the legislation itself which indicates that Congress intended to make any exception of previously filed petitions. The amending language "no person shall hereafter be naturalized" makes it plain enough that the admission to citizenship of every person after the effective date of the statute must be in compliance with it. The natural meaning of the words used in creating the ten-year period would make them applicable to every pending petition whenever filed. When Congress undertook to change the law as to every person naturalized "hereafter" it is reasonable to believe, unless a contrary intent appears, that it intended to make applicants eligible thereafter for citizenship on an equal basis. As no such contrary intent does appear in respect to the ten-year period, we hold that it applies to every pending petition on and after the effective date of the amendment of the Act.

This conclusion is supported by the fact that when Congress was amending this statute in other particulars it did make provision, when it so desired, to have the old law apply to pending petitions filed before the effective date of the amendment. Notice Sec. 26 of the Subversive Activities Control Act of 1950, which amended Sec.

325 of the Nationality Act of 1940, 8 U.S.C.A. § 725. Sec. 325(b) as thus amended provides in so many words that, "Any alien who * * * has filed a petition for naturalization under this section prior to [the date of the approval of this amendment] may, if such petition is pending [on the date of the approval of this section as amended], be naturalized upon compliance with the applicable provisions of the naturalization laws in effect upon the date such petition was filed." The omission to make similar provision in respect to the restriction involved here is, we think, significant in confirmation of our interpretation of its applicability.

Order affirmed.